Caughey v. Snow                          CV-94-226-JD  07/11/95
                 UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF NEW HAMPSHIRE


Richard Caughey

        v.                                  Civil No. 94-226-JD

Robert Snow, et al.


                            O R D E R


        This case involves a January 18, 1992, physical altercation

between the plaintiff, Richard Caughey, and the defendant, Robert

Tetrault.  The defendants Robert Snow and David Roode directed

the police investigation of the incident on behalf of their

employer, the defendant the town of Bartlett (collectively the

"Bartlett defendants").  The investigation resulted in the un-

successful criminal prosecution of the plaintiff in New Hampshire

state court.  The plaintiff alleges that the prosecution was

improper and that the defendants are liable under federal civil

rights law and state tort law.  Before the court are Tetrault's

motion for judgment on the pleadings (document no. 19) and the

Bartlett defendants' motion for judgment on the pleadings

(document no. 18).


                           Discussion

        In their motion the Bartlett defendants assert that they are

entitled to judgment on the pleadings for the federal claims

(Counts I - IV) and the state tort claims (Counts V - VII).  In his motion the defendant Tetrault asserts that he is entitled to judgment on the pleadings for the federal claim (Count I) and the state malicious prosecution claim (Count VIII) in which he is the sole defendant.  In response, the plaintiff argues that his complaint contains sufficient factual averments to allow him to go forward with both the constitutional and pendent state law claims.

Pursuant to Fed. R. Civ. P. 12(c), a motion for judgment on the pleadings will be granted if, accepting all of the plaintiff's factual averments contained in the complaint as true, and drawing every reasonable inference helpful to the plaintiff's cause, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988).  The court's Rule 12(c) analysis is governed by essentially the same standard used when ruling on a Rule 12(b)(6) motion.  Republic Steel Corp. v. Pennsylvania Eng'g Corp., 785 F.2d 174, 182 (7th Cir. 1986).  In both cases, the court's inquiry is a limited one, focusing not on "whether a plaintiff will ultimately prevail but whether [he or she] is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (motion to dismiss under Fed. R. Civ. P.

2

12(b)(6)).  Great specificity is not required to survive a Rule 12(c) motion.  "[I]t is enough for a plaintiff to sketch an actionable claim by means of 'a generalized statement of facts.'" Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (1990)).

I.   Constitutional Claims

The plaintiff has asserted four federal claims under 42 U.S.C. §§ 1983, 1988.  In Count I the plaintiff asserts that each named defendant, acting in concert, violated the constitutional protections afforded by the Fourth, Fifth and Fourteenth Amendments.  In Counts II, III, and IV the plaintiff asserts that the defendants individually violated the same set of constitutional rights.[1]

In their respective motions and supporting memoranda Tetrault and the Bartlett defendants argue, inter alia, that the plaintiff cannot proceed under Counts I - IV because he has failed to allege conduct sufficiently egregious or conscious-shocking as to support a cognizable section 1983 substantive due

---

[1]The plaintiff asserts Count II against defendant Roode in his individual and official capacities; Count III against defendant Snow in his individual and official capacities; and Count IV against the defendant town of Bartlett.

process claim based on malicious prosecution. See Tetrault's Memorandum of Law at 5, 9 (citing Torres v. Superintendent of Police, 893 F.2d 404, 409-410 (1st Cir. 1990), cert. denied, 112 S. Ct. 2323 (1992)); Bartlett Defendants' Memorandum of Law at 4-5 (also citing Torres, 893 F.2d at 409). Tetrault further argues that, even if such egregious facts were established, the Supreme Court's recent ruling in Albright v. Oliver, 114 S. Ct. 807 (1994), has foreclosed such a substantive due process claim based on malicious prosecution. Tetrault's Memorandum of Law at 9-10.

A.   Substantive Due Process

Section 1983 provides that

> [e]very person who, under color of [state authority] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C.A. § 1983 (West 1994). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Albright, 114 S. Ct. at 811 (citations omitted). Notwithstanding the sweeping language of the statute, section 1983 does not provide a remedy for a violation of every protection guaranteed by the constitution. See id. at 813. In Albright a plurality of the Supreme Court held that plaintiffs cannot maintain section 1983

4

malicious prosecution claims based on a due process violation where the conduct complained of also contravenes a liberty interest protected by one of the "specific guarantees of the various provisions of the Bill of Rights." Id. The court reasoned that

> [w]here a particular amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Graham v. Connor, 490 U.S. 386, 395 (1989).

Id. at 813-14; see Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 42 (1st Cir. 1994) ("Albright would appear virtually to foreclose reliance on substantive due process as the basis for a viable malicious prosecution claim under section 1983"); Filion v. Bellows Falls Foods, No. 93-641-SD, slip op. at 8-10 (D.N.H. June 1, 1995) (Under Albright, section 1983 plaintiffs must rely on Fourth Amendment and not substantive due process where alleged deprivations of liberty related to defendants' search and seizure); see also Ayeni v. Mottola, 35 F.3d 680, 691 (2d Cir. 1994), cert. denied, 115 S. Ct. 1689 (1995) (Following Graham and Albright, "it is doubtful that any plaintiff may pursue a Fifth Amendment substantive due process claim based on the same facts as alleged in a Fourth Amendment unreasonable search claim.").

5

It is clear from the plaintiff's response to the defendants' Rule 12(c) motion that his constitutional claims are grounded in alleged violations of the Fourth Amendment. See, e.g., Plaintiff's Response to Defendant's Motion for Judgment on the Pleadings ("Plaintiff's Response") at 5-6 ("There are two possible 'seizures' pleaded in the Complaint which give rise to Fourth Amendment protections."). Indeed, at one point the plaintiff even acknowledges that a "similar claim was brought in Albright v. Oliver, in which the [Supreme Court] . . . held that petitioner's claim was properly adjudged under the Fourth Amendment." Id. at 4-5. Although at times characterized as substantive due process violations, the conduct the plaintiff complains of is inextricably linked to the reasonableness of the criminal investigation and his voluntary "surrender to the State's show of authority [], a seizure for purposes of the Fourth Amendment." Albright, 114 S. Ct. at 812. The recent Supreme Court rulings and subsequent decisions of lower courts, supra, compel the court to view the plaintiff's constitutional claims through a "Fourth Amendment lens" and not under the more generalized notions of substantive due process protected by the Fifth and Fourteenth Amendments. Albright, 114 S. Ct. at 814 (Ginsburg, J., concurring).

6

B.  Search and Seizure

The plaintiff asserts that the defendants violated the Fourth Amendment proscription against unreasonable seizures when they ordered him to surrender on January 19, 1992.  Plaintiff's Response at 6.  The plaintiff also asserts that his subsequent indictment and summons to appear for trial constituted an unconstitutional seizure.  Id. at 7.

> The Fourth Amendment
>
> entitles an individual to "the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law."  Terry v. Ohio, 392 U.S. 1, 9 (1968).

Veiga v. McGee, 26 F.3d 1206, 1214 (1st Cir. 1994).  The Fourth Amendment governs "all seizures of the person, including seizures that involve only a brief detention short of traditional arrest."  United States v. Mendenhall, 446 U.S. 544, 551 (1980) (quotation omitted); Beverly C. v. Hampstead Outlook, Inc., No. 93-307-L, slip op. at 6-7 (D.N.H. July 12, 1994).  However, the amendment's protections do not extend to each situation in which an individual has contact with the police as a person is only considered to have been "seized" where, under the totality of the circumstances, a reasonable person would have believed that he was not free to leave.  E.g., Mendenhall, 446 U.S. at 554.  Finally, "[s]eizure alone is not enough for § 1983 liability; the

7

seizure must be unreasonable." <u>Brower v. County of Inyo</u>, 109 S. Ct. 1378, 1382 (1989).

The plaintiff has alleged that Tetrault and the Bartlett defendants engaged in a variety of improper conduct relative to the investigation of the January 18, 1992, melee at the Red Parka Pub. <u>E.g.</u>, Complaint at ¶¶ 20, 23 (Tetrault lied to police during initial investigation); ¶ 29 (Bartlett defendants coordinated police investigation with Tetrault's private attorney and investigator); ¶ 30 (Bartlett defendant Roode erroneously told plaintiff and plaintiff's former spouse that plaintiff had mortally wounded Tetrault); ¶¶ 31, 39 (Bartlett defendants avoided consideration of potentially exculpatory evidence by refusing to investigate Tetrault and by refusing to interview certain eyewitness). The plaintiff asserts that this wrongful conduct resulted in his forced surrender to the Bartlett Police on January 19, 1992, at which time the plaintiff was read his <u>Miranda</u> rights.

The court finds that these factual allegations adequately sketch an actionable section 1983 claim based on a violation of the Fourth Amendment. The plaintiff has alleged events which, if proven, indicate that a reasonable person may have believed that he was not free to leave the Bartlett police station on January 18, 1992. The fact that defendant Roode read the <u>Miranda</u> rights

8

further suggests that the plaintiff was seized within the meaning of the Fourth Amendment.[2]  Moreover, the complaint also contains sufficient allegations of intentional wrongdoing on the part of Tetrault and the Bartlett defendants to support a finding that the investigation was conducted in such bad faith that any resulting seizures were unreasonable.  Accordingly, the court finds that the claims advanced in Counts I through IV survive the instant motion for a judgment on the pleadings to the extent they are grounded in violations of the Fourth Amendment proscription against unreasonable searches and seizures.  To the extent the claims allege a violation of substantive due process under the Fourteenth Amendment they are dismissed.

## II.  State Tort Claims Against Bartlett Defendants

In Counts V, VI, and VII the plaintiff asserts common law tort claims against the Bartlett defendants.[3]  Each count alleges that the named defendant "negligently and/or recklessly caused Mr. Caughey to be prosecuted, to suffer loss of property, and to

---

[2]Given the ruling, supra, that the plaintiff's voluntary surrender may constitute a "seizure" for purposes of avoiding dismissal on the pleadings, the court need not consider whether the indictment and court summons would also satisfy this element of the prima facie section 1983/Fourth Amendment claim.

[3]The plaintiff asserts Count V against the defendant Snow; Count VI against the defendant Roode; and Count VII against the defendant Town of Bartlett.

9

suffer significant anxiety, anguish, humiliation and expense . . . ."  Complaint at ¶¶ 65 - 67.

In their motion, the Bartlett defendants argue that the plaintiff's state-law claims seek recovery for negligent prosecution, a cause of action not recognized by New Hampshire law.  Bartlett Defendants' Memorandum of Law at 6 - 8 ("Obviously, if there is no state tort for malicious prosecution by public officials, then there cannot be a state tort for 'negligent' prosecutions.") (citing State v. Rollins, 129 N.H. 684, 533 A.2d 331 (1987)).  The plaintiff responds that Counts V, VI, and VII advance two cognizable state law claims in that they allege liability for negligence and for malicious prosecution. Plaintiff's Memorandum of Law at 19.

A.   Negligence

Under New Hampshire law a party seeking to recover for negligence "must show that there exists a duty, whose breach by the defendant causes the injury for which the plaintiff seeks to recover."  Goodwin v. James, 134 N.H. 579, 583, 595 A.2d 504, 507 (1991) (quotations omitted); see Rounds v. Standex Int'l, 131 N.H. 71, 76, 550 A.2d 98, 101 (1988).  Moreover, the existence and extent of a duty of care between the parties depends in part on what risks are reasonably foreseeable from the allegedly tortious conduct.  E.g., Goodwin, 134 N.H. at 583, 595 A.2d at

10

507 (citing <u>McLaughlin v. Sullivan</u>, 123 N.H. 335, 342, 461 A.2d 123, 127 (1983)). "The test of due care is what reasonable prudence would require under similar circumstances." <u>Weldy v. Town of Kingston</u>, 128 N.H. 325, 330-31, 514 A.2d 1257, 1260 (1986). New Hampshire plaintiffs may predicate a lawsuit on the negligent breach of a police officer's duty of due care to members of the public. <u>See</u> <u>id.</u> at 331, 514 A.2d at 1260.[4]

The plaintiff has alleged a variety of facts which, depending on how the record develops, indicate that he may be able to make out a <u>prima</u> <u>facie</u> negligence action in each of the three common-law counts asserted against the Bartlett defendants. Moreover, the allegations concerning the violation of key police procedures, such as the selective inclusion of information on the police report and the improper dissemination of confidential investigative materials to private attorneys contemplating civil action, could also support a finding that one or more of the Bartlett defendants breached a duty of care. Finally, the plaintiff has adequately alleged a loss of property and personal

---

[4]The First Circuit has noted that in the context of a police investigation, an "initial finding of probable cause justifies not only arrest but a reasonable period of continued detention . . . ." <u>Thompson v. Olson</u>, 798 F.2d 552, 556 (1st Cir. 1986), <u>cert. denied</u>, 107 S. Ct. 1354 (1987). However, a finding of probable cause to arrest does not necessarily place a police officer's conduct beyond the scope of a negligence lawsuit as "[p]robable cause does not suspend an officer's continuing obligation to act reasonably." <u>Id.</u>

suffering which, if proven, could support a jury finding that the defendants' conduct proximately caused a cognizable harm.

In light of the factual allegations included in the complaint, the court finds that the plaintiff is entitled to move forward and offer evidence in support of Counts V, VI, and VII to the extent they are advanced under a common-law negligence theory.

### B. Malicious Prosecution

The plaintiff also asserts that Counts V, VI, and VII constitute viable state-law claims for malicious prosecution. Plaintiff's Memorandum of Law at 19.

The Bartlett defendants have correctly noted that "a malicious prosecution claim against a public official in performance of their public duty is not cognizable under New Hampshire law." Tupick v. Gorham, 93-475-JD, slip op. at 16 (D.N.H. Oct. 13, 1995).

> This jurisdiction recognizes the tort of malicious prosecution . . . . Since this rule of liability is generally understood to have no application "to public officials charged with the enforcement of the criminal law in their performance of their public duty", it is difficult to see what would be left of the cause of action if the [defendants] were to have absolute immunity.

Goss v. Hesler, No. 90-426-SD, slip op. at 15 (D.N.H. July 16, 1991) (quoting State v. Rollins, 129 N.H. 684, 687, 533 A.2d 331 (1987)).

12

The issue of governmental immunity has been raised by the defendants but not briefed with specificity. The magistrate judge's August 5, 1994, order indicates that this defense will be advanced in the context of a motion for summary judgment. Caughey v. Snow, No. 94-226-JD, pretrial order at 3 (D.N.H. Aug. 5, 1994). Because the viability of Counts V, VI, and VII as state-law claims for malicious prosecution is inextricably linked to the question of whether the defendants are entitled to immunity, the court denies the motion without prejudice to renew in the context of a motion under Rule 56.

III. State Tort Claim Against Tetrault

In Count VIII the plaintiff asserts a common law tort claim for malicious prosecution against Tetrault. In his motion Tetrault asserts that the plaintiff has not alleged and cannot prove facts to support each element of the claim. Tetrault's Memorandum of Law at 12.

In New Hampshire,

[t]o succeed in an action for malicious prosecution, the "plaintiff must prove that he was subjected to a criminal prosecution instituted by the defendant without probable cause and with malice, and that the criminal proceeding terminated in his favor."

Hogan v. Robert H. Irwin Motors, Inc., 121 N.H. 737, 738, 433 A.2d 1322, 1324 (1981) (quoting Stock v. Byers, 120 N.H. 844,

13

845, 424 A.2d 1122, 1123 (1980)); see Restatement (Second) of Torts, § 653 (1977).

In the context of malicious prosecution claims advanced under section 1983, courts have acknowledged that indictment by a grand jury may insulate a defendant from liability.

> [I]f the facts supporting the warrant or the indictment are put before an impartial intermediary such as a magistrate or grand jury, . . . the intermediary's independent decision breaks the causal chain and insulates the initiating party.

Hand v. Gary, 838 F.2d 1420, 1427 (5th Cir. 1988); see Taylor v. Gregg, 36 F.3d 453, 456-67 (5th Cir. 1994) (citing cases). However, the grand jury's finding of probable cause to indict does not bar an action for malicious prosecution in those cases where the "malicious motive of the law enforcement officials [results in the] withold[ing of] relevant information from the independent intermediary." Hand, 838 F.2d at 1428; see Goodwin v. Metts, 885 F.2d 157, 162 (4th Cir. 1989) ("a prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but proceed to trial -- none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision" to arrest) (quoting Jones v. City of Chicago, 856 F.2d 985, 994 (7th Cir. 1988)).

14

The plaintiff has included in the complaint allegations which, if later proven, could support each one of the elements of this tort. First, there appears to be no dispute that the plaintiff was prosecuted and ultimately acquitted for his conduct relative to the altercation with Tetrault. Second, the plaintiff has set forth a variety of allegations concerning Tetrault's involvement in the initiation and maintenance of those criminal charges. For example, Tetrault directed his attorney and a private investigator to collaborate with the Bartlett defendants in order to bring criminal and civil charges against the plaintiff. Third, the plaintiff has set forth facts which raise doubt about the existence of probable cause for his prosecution and further suggest that Tetrault acted with malice. Specifically, the allegations that Tetrault, intoxicated and vindicative from a prior altercation, initiated the incident with threatening language and conduct indicates that the plaintiff may have acted reasonably and legally by striking in self-defense, thus vitiating any assertion that probable cause existed for his prosecution. Likewise, the deeply acrimonious relationship between Tetrault and the plaintiff, coupled with the allegations that Tetrault actively participated in the bringing of criminal charges, if substantiated, could satisfy the lack of probable cause and malice elements of the tort. Finally, Tetrault's

15

conduct, along with that of his attorney, may have caused the prosecution to withold relevant evidence and potentially exculpatory evidence from the grand jury which indicted the plaintiff.

The court finds that Count VII adequately sketches an actionable malicious prosecution claim under New Hampshire law.


## Conclusion

The court's Rule 12(c) inquiry reveals that the plaintiff is entitled to offer evidence in support of at least one claim asserted in each of his counts. Accordingly, the motions of the Bartlett defendants (document no. 18) and of Tetrault (document no. 19) for judgment on the pleadings are denied.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
Chief Judge

July 11, 1995

cc:  Andrew L. Isaac, Esquire
     Robert E. McDaniel, Esquire
     Peter G. Beeson, Esquire

16