John J. EICHHORN, Plaintiff–Appellant,

v.

Georgia KELLEY and Walter Keith, Defendants–Appellees.

No. 03CA1202.

Colorado Court of Appeals, Div. II.

Dec. 16, 2004.

Certiorari Granted May 16, 2005.

Wilderson, O'Hayre, Dawson & Frazier, P.C., Rufus O. Wilderson, Gunnison, Colorado, for Plaintiff–Appellant.

Robert J. Thomas, Montrose, Colorado, for Defendants–Appellees.

CARPARELLI, J.

In this punitive contempt proceeding, plaintiff, John J. Eichhorn (landowner), appeals the trial court's order finding his conduct offensive to the dignity of the court and imposing punitive sanctions for violating a 1997 court order in a previous action against defendants, Georgia Kelley and Walter Keith (hunters). We affirm.

Landowner and his brother own a ranch that is subject to a hunting easement for the benefit of hunters' adjacent parcel. A dispute arose regarding the nature and scope of their respective rights and landowner sued hunters, alleging trespass and seeking declaratory and injunctive relief. Hunters counterclaimed alleging tortious interference with contractual relationships and also sought declaratory and injunctive relief. Among other things, hunters alleged that landowner had interfered with and frustrated hunters' efforts to use the easement by intimidation and, for a period of several days, by operating heavy equipment near a hunting area while hunters attempted to hunt there. Hunters asked the court to order landowner not to obstruct use of the easement and to remove a hunting camp situated on an elk crossing.

In 1997, the trial court entered an order in which it adjudicated each party's rights and obligations, declined to order landowner to move his hunting camp, and stated that "extraordinary use of motorized vehicles, excessive noise, unreasonably large 'hunting parties' and similar acts [by landowner] whose purpose or effect appears to be to frustrate any successful hunt by [hunters] shall be construed as a violation of this Order."

In 2000, hunters filed a contempt motion in which they alleged that landowner's commercial logging operation on the property was affecting their access and hunting rights.

In 2001, after a hearing, the trial court issued an order finding landowner in contempt and imposed punitive sanctions for violating the 1997 order by clear-cutting 200 to 350 acres of timber on the property.

Landowner appealed, and a division of this court, in *Eichhorn v. Kelley*, 2002 WL 1832838 (Colo.App. No. 01CA0922, Apr. 4, 2002)(not published pursuant to C.A.R. 35(f)), affirmed the finding of contempt against landowner. However, the division vacated the trial court's imposition of punitive sanctions and remanded for findings as to whether landowner's conduct was offensive to the authority and dignity of the court and for reconsideration of the sanctions.

On remand, landowner moved to disqualify hunters' counsel and dismiss the finding of contempt, alleging for the first time that, in accordance with *Young v. United States*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987), it was improper for hunters' counsel to prosecute the contempt. The trial court denied landowner's motion.

In 2003, after taking additional evidence, the trial court found that landowner's conduct was offensive to the dignity of the court and imposed a two-day jail sentence and a $1,000 fine.

I.

Because a division of this court affirmed the finding of contempt and remanded solely for findings related to punitive sanctions, we decline to consider landowner's arguments that the trial court erred when it entered its finding of contempt in 2001. *See Estate of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718 (Colo.1992). Instead, we limit the scope of our review to contentions of error in the proceedings, findings, and conclusions on remand.

## II.

Landowner argues that the attorney for hunters should not have been permitted to prosecute the contempt proceedings. We disagree.

 Conduct that offends the authority and dignity of the court may result in punitive sanctions and, as a result, is sometimes called criminal contempt. C.R.C.P. 107(a)(4); *People v. Razatos,* 699 P.2d 970 (Colo.1985). Despite this appellation, and although contemnors are entitled to certain constitutional protections, conduct that is found to be offensive to the authority and dignity of the court pursuant to C.R.C.P. 107 is not criminal conduct, and contempt is not a statutory criminal offense. *Bloom v. State of Ill.,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); *People v. Barron,* 677 P.2d 1370 (Colo.1984); *Kourlis v. Port,* 18 P.3d 770 (Colo.App.2000); *Benninghoven v. Dees,* 849 P.2d 906 (Colo. App.1993); *see Vela v. District Court,* 664 P.2d 243 (Colo.1983). The power to impose punitive sanctions for such conduct is an inherent and indispensable power of the court. It is not derived from statute and exists independent of legislative authority. *People v. Razatos, supra; People v. Barron, supra; Austin v. City & County of Denver,* 156 Colo. 180, 397 P.2d 743 (1964).

### A.

 To the extent landowner argues that § 20–1–102, C.R.S.2004, required that the district attorney prosecute the proceedings on remand, we disagree.

Section 20–1–102 provides that in all indictments, actions, and proceedings in district court in which the state or people are a party, the district attorney must appear on behalf of the people of the state and counties. Section 20–1–102(1), C.R.S.2004.

We first reject landowner's implicit contention that § 20–1–102 pertains to proceedings other than criminal. *See* § 24–31–101, C.R.S.2004 (powers and duties of attorney general explicitly include representation of the state in criminal *and civil* actions); § 30–28–124, C.R.S.2004 (penalties for violation of county planning codes enforced by county attorney, not district attorney); § 30–28–209,

C.R.S.2004 (penalties for violations of county building codes enforced by county attorney, not district attorney); *Stilley v. Tinsley,* 153 Colo. 66, 385 P.2d 677 (1963)(district attorney must appear on behalf of the People in criminal proceedings).

Section 20–1–102 provides for the representation of the state and counties in cases in which they are parties. Landowner cites no cases, references no legislative history, and provides no colorable argument upon which we can conclude that the legislature intended that the statute protect the rights of defendants in contempt proceedings. To the contrary, we conclude that, like § 18–1–1002, C.R.S.2004, § 20–1–102 exists to protect the state's interests, not the defendant's. *See In re Marriage of Helmich,* 937 P.2d 897 (Colo. App.1997) (§ 18–1–1002 requirement of notice to district attorney in contempt proceedings not intended as a protection for defendants in contempt proceedings).

### B.

 To the extent landowner argues that the holding in *Young v. United States, supra,* prohibits hunters' counsel from prosecuting the proceedings on remand, we disagree.

In *Young,* the Supreme Court exercised its supervisory authority over federal courts and held that "counsel for a party that is the beneficiary of a court order may not be appointed as prosecutor in a contempt action alleging a violation of that order." *Young v. United States, supra,* 481 U.S. at 809, 107 S.Ct. at 2138. Because the ruling was an exercise of the Court's supervisory authority and not a determination of constitutional requirements, *Young* does not apply to state court contempt proceedings. *See Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). Therefore, we conclude that the holding in *Young* did not preclude hunters' counsel from prosecuting the proceedings on remand.

Landowner acknowledges that the Colorado Supreme Court has not addressed this precise issue, but he contends that, in *Harthun v. District Court,* 178 Colo. 118, 495 P.2d 539 (1972); and *Groves v. District Court,* 806 P.2d 947 (Colo.1991), the court

agreed with *Young* and with similar decisions by the courts of other states. Both *Harthun* and *Groves* were decided before the court amended C.R.C.P. 107 in 1995.

In *Harthun*, the trial court found a criminal defense attorney in contempt because he did not appear after trial had begun and been continued. The supreme court reversed because the trial court did not find that the attorney acted with willful intent to inconvenience and delay the court. The court also commented that the judge should not be both prosecutor and judge in an indirect contempt case, a different judge should preside on remand, and the district attorney should prosecute the case.

In *Groves*, the supreme court explicitly declined to reach the issues addressed in *Young*. There, after holding that the public defender's duties are limited by statute and that the statute did not permit him to prosecute contempt citations, the supreme court commented that the trial court should have appointed a special prosecutor.

Although the supreme court expressed the view that the district attorney or a special prosecutor should prosecute those contempts, it did not establish a judicial rule that the beneficiary of a civil order may not prosecute a contempt for violation of that order. Nor did the court do so when it later amended and adopted C.R.C.P. 107. To the contrary, it granted trial courts discretion to select and appoint special counsel. C.R.C.P. 107(d)(1).

A rule prohibiting the beneficiary of a civil order from prosecuting a contempt would have broad consequences, and we decline to infer the existence of such a rule from cases that pre-date C.R.C.P. 107. In addition, because this court has no supervisory authority over the state court system, we do not establish such a rule here.

### C.

Although landowner argues that the decisions in *Harthun* and *Groves* are consistent with C.R.C.P. 107, he does not discuss the requirements of that rule and does not argue that the participation of hunters' counsel in the remand proceedings violated it. Therefore, we do not address whether C.R.C.P. 107 prohibits the beneficiary of a court order from prosecuting a contempt citation for its violation.

### D.

■ Landowner argues that hunters' counsel did not have standing to prosecute the contempt proceedings on remand and, thus, that the contempt order must be reversed. We are not persuaded.

Here, on remand, hunters' counsel argued in support of sanctions and, except for cross-examination of landowner's witnesses, presented no evidence.

■ When noncompliance with a court order occurs out of the direct sight or hearing of the court, it is proper for an aggrieved party who knows of the noncompliance to bring the matter to the attention of the court by initiating contempt proceedings and seeking sanctions. Indeed, this is the most common process. *See Orr v. Orr*, 141 Fla. 112, 192 So. 466 (1939); *Frey v. Willey*, 161 Kan. 196, 166 P.2d 659 (1946).

Landowner relies on cases from other jurisdictions but in each of the jurisdictions landowner cites, criminal contempt is a criminal proceeding. *See Denny v. State*, 203 Ind. 682, 182 N.E. 313 (1932)(criminal contempt is a criminal action and must be charged by information, titled "State of Indiana v. the defendant," and prosecuted by the state); *Peterson v. Peterson*, 278 Minn. 275, 153 N.W.2d 825 (1967)(private attorney for a party to the proceeding has no status that authorizes him to prosecute because the offense is one against the state); *Leeman v. Vocelka*, 149 Neb. 702, 32 N.W.2d 274 (1948)(criminal contempt can be prosecuted only in the name of the state and only by information, and private litigants have no authority to prosecute such actions); *McDermott v. McDermott*, 8 Neb.App. 860, 602 N.W.2d 676 (1999)(criminal contempt charge should be in the name of the state and by information, and the alleged contemnor should be instructed that he may claim Fifth Amendment privilege); *State v. Martineau*, 148 N.H. 259, 808 A.2d 51 (2002)(private prosecutors cannot prosecute criminal offenses such as criminal contempt); *City of Lawton v. Barbee*, 782

P.2d 927 (Okla.1989)(prosecution for criminal contempt is criminal in nature and must be prosecuted in the name of the state).

Consequently, these cases are distinguishable, and we decline to adopt their holdings because contempt resulting in punitive sanctions is not a criminal offense in Colorado. *See Kourlis v. Port, supra; Benninghoven v. Dees, supra.* And we perceive no basis to conclude that the participation by hunters' counsel here deprived the court of the inherent power to conclude that landowner's conduct offended the dignity of the court.

### III.

 We decline to consider landowner's contention that the proceedings on remand relied on inadmissible evidence presented at the earlier contempt hearing. Landowner did not raise these issues in his appeal of the contempt order and, thus, waived them. *See Estate of Stevenson v. Hollywood Bar & Cafe, Inc., supra.*

### IV.

Landowner next contends that the trial court erred when it found that his conduct was offensive to the dignity of the court. Landowner argues he did not know the order applied to logging, that he tried to accommodate hunters, and that he acted in good faith. Thus, he asserts his conduct cannot be offensive. We treat this argument as a challenge to the sufficiency of the evidence and conclude there was no error.

To impose a jail sentence or fine as a punitive sanction, a court must find that the contemnor's conduct is offensive to the authority and dignity of the court. *Bd. of Water Works v. Pueblo Water Works Employees Local 1045,* 196 Colo. 308, 586 P.2d 18 (1978); *People in Interest of Murley,* 124 Colo. 581, 239 P.2d 706 (1951); *Lobb v. Hodges,* 641 P.2d 310 (Colo.App.1982).

Factual determinations are committed to the sound discretion of the trial court, and we must accept those findings unless there is no support in the record or the findings are clearly erroneous. *Nat'l Pro-*

*pane Corp. v. Miller,* 18 P.3d 782 (Colo.App. 2000).

On remand, the trial court found that landowner's logging operations were conducted with the "purpose or effect" of frustrating hunters' hunt and that, given the number of hearings and orders that were drafted to avoid such a conflict, landowner acted willfully and his conduct was offensive to the dignity of the court.

There is sufficient evidence in the record to support this conclusion, and thus, we perceive no error.

The order is affirmed.

Judge ROTHENBERG and Judge CASEBOLT concur.